273 F.3d 1124 (D.C. Cir. 2001)
 Valerie Thomas, Appellee
v.
National Football League Players Association, Appellant
 No. 01-7023
 United States Court of Appeals FOR THE DISTRICT OF COLUMBIA CIRCUIT
 Argued November 7, 2001
Decided December 11, 2001
 
 Appeal from the United States District Court for the District of Columbia (No. 91cv03332)
 Joseph A. Yablonski argued the cause the for appellant.
 David L. Rose argued the cause for the appellee. Joshua N. Rose was on brief for the appellee.
 Before: Sentelle, Henderson and Tatel, Circuit Judges.
 
 
 1
 Opinion for the court filed by Circuit Judge Henderson.
 
 Karen LeCraft Henderson, Circuit Judge:
 
 2
 The National Football League Players Association (NFLPA) appeals an award of attorney's fees to Valerie Thomas, a successful plaintiff in a discrimination action against the NFLPA, and the denial of costs against Rita Raymond and Julie TaylorBland,[1] unsuccessful plaintiffs in the same action. For the reasons set out below, we affirm the fee award to Thomas and remand for entry of an award of costs to the NFLPA against Raymond and Taylor-Bland.
 
 I.
 
 3
 At a March 1988 board meeting, the NFLPA's Board of Directors decided to lay off eleven per cent of its workforce. After the meeting a number of employees, including Thomas and Taylor-Bland, met with the new Board president, George Martin. Thomas, who had previously filed a charge of race and gender discrimination with the Equal Employment Opportunity Commission, complained of the lack of promotional opportunities for blacks and women at the NFLPA. At a second staff meeting the following month, Thomas again raised these concerns. Subsequently, Martin and NFLPA Board vice president Mike Davis conducted private interviews with employees, including Thomas, Taylor-Bland and Raymond.
 
 
 4
 On March 18, 1988 Gene Upshaw, NFLPA Executive Director, after conferring with Martin and Davis, laid off Thomas, Raymond and four other employees. On April 12, 1988 Upshaw terminated all but one of the six laid-off employees "for cause," namely that they "made libelous and slanderous statements concerning NFLPA's executive personnel, violated the confidentiality and trust required [of them], were disloyal to NFLPA, and engaged in other acts which were intended to undermine NFLPA's effectiveness in serving the interests of its members." Joint Appendix (JA) 154. According to Upshaw's trial testimony, he fired Thomas and Raymond because of statements they had made to Martin and Davis and because he believed they were responsible for circulating a pamphlet critical of the NFLPA's treatment of employees. A short time later Taylor-Bland, who had been Upshaw's secretary, was reassigned to what she considered an inferior position. She resigned on June 13, 1988. Thomas and Raymond pursued union grievances over their termination resulting in an arbitrator's award ordering them reinstated. The NFLPA, however, did not reinstate them.
 
 
 5
 Thomas, Raymond and Taylor-Bland filed this suit in December 1991 pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e et seq. Their Fourth Amended Complaint alleged the NFLPA (1) failed to promote all three plaintiffs as a part of a pattern of racial and gender discrimination in promotions; (2) laid off Thomas and Raymond and transferred Taylor-Bland on account of their race and gender and in retaliation for Thomas's filing a discrimination charge, Raymond's filing a grievance[2] and the three employees' vocal opposition to discriminatory practices; (3) discharged Thomas and Raymond and constructively discharged Taylor-Bland on account of their race and gender and in retaliation for their opposition to discriminatory practices; (4) failed to reinstate Thomas and Raymond pursuant to the arbitrator's award on account of their race and gender and in retaliation for their protected activities; and (5) failed to pay Thomas a salary equal to those of male employees doing substantially the same work.
 
 
 6
 During a bench trial in December 1995, the district court dismissed the arbitration claim and granted judgment as a matter of law in the NFLPA's favor on the pattern of discrimination claim.[3] After trial the district court issued a memorandum opinion and order on July 24, 1996 granting judgment in favor of Thomas on her retaliation claims and awarded her back pay and benefits of $70,840 (plus prejudgment interest) for the period from her March 1988 lay-off to December 1989, by which time, the court concluded, Thomas would have been re-employed had she diligently sought new employment. At the same time the court granted judgment in favor of the NFLPA on all of Raymond's and TaylorBland's claims. JA 167.
 
 
 7
 On August 1, 1996 the NFLPA filed a bill of costs, asserting it was the prevailing party and therefore entitled to recover costs against Raymond and Taylor-Bland "totally and completely" and "on eight of the ten race, sex, and retaliation claims asserted by Thomas." JA 168. The district court denied the NFLPA its costs in an order filed October 15, 1996 and in a memorandum filed November 26, 1996.
 
 
 8
 The NFLPA appealed the judgment in favor of Thomas. This court affirmed the judgment but remanded for the district court to reconsider the amount of prejudgment interest. Thomas v. National Football League Players Ass'n, 131 F.3d 198 (D.C. Cir. 1997) (as vacated in part on rehearing Feb. 25, 1998).[4]
 
 
 9
 After remand the district court issued a memorandum order and an amended judgment on March 25, 1999 awarding Thomas $73,390.60 in back pay, fringe benefits and prejudgment interest, plus post-judgment interest from October 21, 1996. JA 213-15. On May 28, 1999 Thomas filed a motion for costs, including attorney's fees pursuant to 42 U.S.C. § 2000e-5(k),[5] of $563,637, JA 216, which she corrected to $505,138.23 on June 30, 1999, JA 406. In a memorandum opinion and order filed March 29, 2000 the district court denied the motion but granted leave to file a new motion conforming to guidelines set out in the opinion. JA 457.
 
 
 10
 Thomas filed a new motion on August 29, 2000 seeking total costs of $394,950, including attorney's fees of $355,193. JA 466. In a memorandum order filed December 15, 2000 the district court reduced the fee award to approximately $338,000.[6] JA 501-10.
 
 
 11
 The NFLPA appealed both the amount of the attorney's fees awarded and the denial of its costs. We address the challenges separately.
 
 II.
 
 12
 On appeal we may overturn the district court's award of attorney's fees " 'only if it represents an abuse of discretion.' " Williams v. First Government Mortgage and Investors Corp., 225 F.3d 738, 746 (D.C. Cir. 2000) (quoting Copeland v. Marshall, 641 F.2d 880, 901 (D.C. Cir. 1980) (en banc)). Further, the district court's underlying findings of fact will be sustained unless clearly erroneous. See City of Riverside v. Rivera, 477 U.S. 561, 572 (1986). Applying these standards we uphold the district court's attorney's fee award.
 
 
 13
 The NFLPA contends the amount of the attorney's fee award is excessive for three reasons. First, it challenges the fee award on the ground it is excessive in relation to the limited success achieved, given that only one of three plaintiffs prevailed on only two of her claims. In Hensley v. Eckerhart, 461 U.S. 424 (1983), the United States Supreme Court laid out the standards for awarding fees to a plaintiff who, like Thomas, achieves only limited success:
 
 
 14
 Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.
 
 
 15
 461 U.S. at 440. We conclude the district court reasonably applied the Hensley factors in calculating Thomas's fee award.
 
 
 16
 "Evaluation of the interrelatedness of several claims within a single lawsuit, and of the legal work done on those claims, is most appropriately a task for the district court that heard and decided the case...." Hensley, 461 U.S. at 453 (Brennan, J., concurring). The district court adequately performed the task here. In the March 29, 2000 decision denying Thomas's initial fee petition the district court acknowledged the limited nature of her success and properly segregated Thomas's successful claims from the unsuccessful ones. The court expressly found that "her unsuccessful claims of discriminatory layoff and discharge were related to her successful claim of discrimination" but that her "pattern and practice claim of discriminatory failure to promote was 'distinctly different' from her other claims" and that her counsel therefore "may recover no fees for their work on that claim." JA 462. The court also concluded, appropriately, that Thomas should not recover fees "for segregable time devoted to the failed individual claims of Ms. Raymond and Ms. Taylor-Bland." JA 462. While noting that Thomas's counsel had "already backed out of the fee petition 'time and expenses unique to the factual proof of the pattern of promotions claim and to the individual claims of Raymond and Bland,' " JA 462-63,[7] the court emphasized that the resubmitted costs motion should be limited to fees incurred "in connection with Ms. Thomas's claim of retaliation and of discriminatory layoff and discharge." See JA 463. After Thomas resubmitted her motion, the court noted that the new fee amount was "some 22 percent less than the amount previously requested," JA 501, and found that counsel had "made a good-faith effort to 'back out' time principally related to plaintiff's pattern and practice claims and the failed individual claims of Ms. Raymond and Ms. Taylor-Bland," JA 507. We cannot say this finding is clearly erroneous. Nonetheless, the court further reduced the time claimed by 23.75 hours based on the NFLPA's specific objections, see JA 501-03, and found that the resulting award of approximately $338,000 was not "unreasonable in relation to the overall result achieved" given the length of the litigation and the "dilatory" defense waged, JA 508-09.[8] This finding too must be sustained. That the fees awarded are, as the district court acknowledged, "nearly five times the amount of plaintiff's recovery," JA 507, does not make them excessive. See City of Riverside, 477 U.S. at 576 ("[R]easonable attorney's fees under § 1988 are not conditioned upon and need not be proportionate to an award of money damages."); cf. Williams, 225 F.3d at 747 ("declin[ing] to read a 'rule of proportionality' into the [District of Columbia Consumer Protection Procedures Act]").
 
 
 17
 The NFLPA further challenges the fee award on the ground Thomas did not offer adequate billing records to substantiate the apportionment of time among the successful and unsuccessful claims. We reject this contention as well. The district court acknowledged that the records "were not in the best of shape,"--and accordingly reduced the costs awarded Thomas for time spent responding to the NFLPA's interrogatories about the records. JA 502-03. Nevertheless, the court found the records sufficient to support the fee awarded and, reviewing the record, we cannot say its finding was clearly erroneous.
 
 
 18
 Finally, the NFLPA asserts that under Rule 68 Thomas is ineligible for any costs, including attorney's fees, incurred after August 14, 1995. Rule 68 provides in relevant part:
 
 
 19
 At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.
 
 
 20
 Fed. R. Civ. P. 68. The NFLPA contends that its August 14, 1995 offer of $60,000 to the three plaintiffs shifted all postoffer costs, including attorney's fees, to Thomas because the offer exceeded her final recovery which, if pre-judgment interest were calculated at the 52-week Treasury-Bill rate as of that date, was only $59,018.70, that is, below the $60,000 offer of judgment. We reject this argument for two reasons.
 
 
 21
 First, the district court in fact calculated pre-judgment interest at the prime rate of interest rather than at the Treasury-Bill rate. See JA 167. The NFLPA does not dispute that with interest calculated at the higher prime rate Thomas's final recovery exceeds the NFLPA's $60,000 offer of judgment. Nor can the NFLPA effectively challenge the propriety of using the prime rate. See Forman v. Korean Air Lines Co., Ltd., 84 F.3d 446, 451 (D.C. Cir.), cert. denied, 519 U.S. 10 (1996) ("[W]e think the Seventh Circuit is correct--that the prime rate is not merely as appropriate as the Treasury Bill rate, but more appropriate....") (emphasis original; citing In re Oil Spill by the Amoco Cadiz Off the Coast of France, 954 F.2d 1279, 1332 (7th Cir.1992)).
 
 
 22
 Second, we agree with the Seventh Circuit's decision in Gavoni v. Dobbs House, Inc., 164 F.3d 1071, 1075 (7th Cir. 1999), that an unallocated offer of judgment to multiple defendants is not effective under Rule 68. The Seventh Circuit rested its decision on two grounds: (1) "A judgment less favorable than the offer requires that a plaintiff pay the defendant's usually substantial post-offer costs and [t]here must therefore be a clear baseline from which plaintiffs may evaluate the merits of their case relative to the value of the offer" and (2) "courts also need easily comparable sums." 164 F.3d at 1076. Because the record does not reflect that the individual plaintiffs knew the value to each of them of the lump-sum offer, they "simply could not have evaluated the individualized values of the offer" and "without two precise figures to compare, the district court was in no position to resolve the lack of precision." Id. Accordingly, we conclude the joint offer of judgment did not trigger Rule 68's costshifting provision.
 
 
 23
 For these reasons we conclude the district court's award of attorney's fees to Thomas should be affirmed.[9]
 
 III.
 
 24
 Finally, the NFLPA contends the district court should have awarded it costs insofar as it was the "prevailing party" against Raymond and Taylor-Bland.[10] As noted above, the NFLPA filed a bill of costs on August 1, 1996, seeking $11,112.35 for transcripts, copies of trial exhibits and copying costs. JA 168. In a memorandum opinion dated November 26, 1996 the district court concluded the NFLPA was not entitled to costs because "the court consider[ed] plaintiff Thomas to be the prevailing party." JA 179. We agree with the NFLPA that this ruling was an abuse of the district court's discretion.
 
 
 25
 Rule 54(d)(1) of the Federal Rules of Civil Procedure provides in relevant part: "Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs...." Fed. R. Civ. P. 54(d)(1). While Thomas may have been the sole prevailing party on her own claims against the NFLPA, it is uncontestable that the NFLPA was the sole prevailing party on the claims asserted by Raymond and Taylor-Bland. Thus, under the plain language of Rule 54(d)(1) the NFLPA is entitled to recover costs against them "as a matter of course." See Byers v. Dallas Morning News, 209 F.3d 419, 425-26 (5th Cir. 2000) (successful Title VII employer is entitled to costs under express language of Rule 54)d)(1)).[11]
 
 
 26
 For the preceding reasons we affirm the award of attorney's fees to Thomas and remand to the district court to award the NFLPA costs under Rule 54(d)(1) as the "prevailing party" against Raymond and Taylor-Bland.
 
 
 27
 So ordered.
 
 
 
 Notes:
 
 
 [1]
 Julie Taylor-Bland was formerly Julie Bland.
 
 
 [2]
 In 1987 Raymond had complained to her local of race and gender discrimination after being denied a promotion for which she applied.
 
 
 [3]
 The equal pay claim had been dismissed by stipulated order on October 13, 1995.
 
 
 [4]
 The NFLPA also appealed the denial of its costs but the court did not reach the issue.
 
 
 [5]
 This section provides:
 In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.
 
 
 [6]
 The court provided only an estimate of the new figure in recognition that "the several deductions required by the rulings set forth in [its] memorandum w[ould] have to be calculated by plaintiff's counsel (and a new form submitted)." JA 507.
 
 
 [7]
 According to Thomas's counsel's declaration, they had "excluded approximately $42,000 of time and expenses from the amount claimed ... based on lack of success on the Raymond and Bland claims and on the statistical promotion case." JA 451.
 
 
 [8]
 The court characterized the defense as " 'dilatory' in the classic sense, ... not to state or imply that the defense was in any way improper, or harassing, or oppressive" but "simply the unfortunate stuff of modern, knock-down, drag-out litigation." JA 508.
 
 
 [9]
 The NFLPA also contends the district court was required to consider as a factor in awarding fees that Thomas and her counsel adopted "unreasonable settlement positions" during the litigation. See Brief for Appellant at 38-40. The district court has discretion to consider settlement negotiations in determining the reasonableness of fees but it is not required to do so. See Sands v. Runyon, 28 F.3d 1323, 1334 (2d Cir. 1994) ("[T]he Postal Service made an offer of judgment in December 1992 that would have given plaintiff a back pay award equal to the amount calculated by his own expert, and paying his attorney one-half of her requested fees. The district court remarked that this offer was strikingly similar to the court's eventual judgment in 1993. This is a factor a court may use in considering the attorney's fee award."); Vocca v. Playboy Hotel of Chicago, Inc., 686 F.2d 605, 608 (7th Cir. 1982) ("Counsel's refusal to settle the case earlier for an amount only slightly less than the amount ultimately agreed upon, accompanied by his statement that Playboy could afford to pay more, provide sufficient support for the district court's conclusion that he had unreasonably prolonged the litigation."). The court's decision not to do so below was not an abuse of its discretion.
 
 
 [10]
 As noted above, the NFLPA's bill of costs below sought costs against Thomas as well. On appeal the NFLPA appears not to do so. See Brief for Appellant at 41-42.
 
 
 [11]
 Thomas's counsel contend that the bill of costs filed August 1, 1996 was "premature" because it was submitted before a judgment was filed. We are aware of no support for this contention, either in Rule 54 or case law, and, accordingly, reject it summarily.